Enrique BUGARIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 1558–89.

Court of Criminal Appeals of Texas.

May 30, 1990.

Bruce W. Weathers, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Debra Morgan, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

PER CURIAM.

A jury convicted appellant of burglary of a vehicle, and assessed punishment, enhanced with two prior felony convictions, at 50 years imprisonment. The conviction was affirmed. *Bugarin v. State,* 777 S.W.2d 556 (Tex.App.—El Paso 1989). Appellant petitioned this Court for review claiming that the Court of Appeals erred in holding that delivery of the parole law charge under Art. 37.07, Sec. 4, V.A.C.C.P., was not reversible error.

We have considered the issue raised and find that the Court of Appeals reached the correct result. The petition for discretion-

ary review will be refused. As is true in every case where this Court refuses a petition for discretionary review, however, refusal does not constitute endorsement or adoption of the reasoning employed by the Court of Appeals. See *Sheffield v. State*, 650 S.W.2d 813 (Tex.Cr.App.1983). Moreover, harm determinations relevant to submission of the unconstitutional parole statute are now governed by this Court's opinion in *Arnold v. State*, 784 S.W.2d 372 (Tex.Cr.App.1990).

With this understanding, appellant's petition for discretionary review is refused.

McCORMICK, P.J., concurs.

TEAGUE, J., dissents.

CLINTON, Judge, dissenting.

This is a *"Rose* error" case. *Rose v. State*, 752 S.W.2d 529 (Tex.Cr.App.1987–

1988). The applicable instruction on parole law is former § 4(b) of Article 37.07, V.A.C. C.P.

Guided by the plurality opinion on rehearing, *Rose*, at 552, the court of appeals engaged in a harm analysis that first presumed the jury adhered to what the court regarded as a prohibition in the § 4(b) instruction itself, and then focused on the prior criminal record of appellant to declare that "it is somewhat surprising that one who is apparently so fond of incarceration would even complain about the sentence imposed in this case." *Bugarin v. State*, 777 S.W.2d 577 (Tex.App.—El Paso 1989).[1]

Of course, this Court had not yet decided *Arnold et al. v. State*, 784 S.W.2d 372 (Tex.Cr.App.1990). Consistent with the "best likelihood" premise therein prescribed at 377, indicia here are that this jury may have done just that.[2] Instead of

---

1. Not only was appellant complaining, but his counsel pointed out to the El Paso Court a certain verity, *viz:*

   "... Obviously, although not always so to the intermediate appellate courts of this state, the existence of some other factors which might have warranted a severe punishment *does not automatically mean that it is beyond a reasonable doubt that the parole charge made no contribution to punishment.*"

   Appellant's Brief, at 4–5 (my emphasis here and throughout unless otherwise noted).

   Also, counsel quoted to the El Paso Court pertinent portions of the opinion in *Olivarez v. State*, 756 S.W.2d 113 (Tex.App.—San Antonio 1988) no PDR, *viz:*

   "... The Court of Criminal Appeals did not reason that, because the facts and criminal record justified and supported a life sentence, the erroneously given instruction did not contribute to punishment. Such reasoning would incorrectly apply Rule 81(b)(2). 'The evil to be avoided is the consideration by the jury of parole in assessing punishment.' *Rose I*, at 535."

   Appellant's Brief, at 5. Indeed, *Olivarez* is strikingly similar to the facts of this case, though that is aggravated robbery.

2. Appellant objected to the § 4(b) instruction in that it violated his rights of due process. Prosecutor responded that the legislature had decided "the jury should be aware of the parole law" and several courts of appeals "have already affirmed convictions based on the parole law issue." The trial court overruled the objection.

   In jury argument the prosecutor got into specific comments about the § 4(b) instruction, e.g., "they tell you in there about 20 years and the good time credit, and so forth;" appellant

again objected on constitutional grounds, but was overruled. VSF 34–35.

In his turn, counsel for appellant described his client as nothing more than a common "thief," yet "if you assess a punishment of 25 or 30 years, that's exactly what that means, 25 or 30 years, regardless of what [the prosecutor] was telling you," *id.*, at 40–41, so life or 99 years "does not make any sense," and he asked for twenty five years enhanced punishment, *id.*, at 42–43.

On closing the prosecutor reprised appellant's enhancement convictions and his entire prior criminal record from the pen packets, showing a "continuing course of criminal behavior." V SF 44–48. He argued that *the problem is that he's not changing and we do know that parole exists*, and I am not asking you to go back there and decide, hey, he's *only going to do 20 years*, he's probably going to be a good guy.... I am telling you the reality of the situation." *Id.*, at 49. Opining "rehabilitation is [not] going to work here," he knew "the only thing we can do with [appellant] is keep him away from us for as long as possible, and that's why ... I am asking you to give him life in the penitentiary." *Id.*, at 51–52. Referring again to nine prior convictions and three previous trips to three different penitentiaries, he urged the jury to "raise the stakes" to life. *Id.*, at 53. Acknowledging that assessing the maximum is not an easy job, he insisted "there's nothing left to do," and concluded with a plea to give appellant life in the penitentiary. *Id.*, at 53–54.

Shortly after retiring the jury requested "to see the chart of the crimes committed by [appellant];" the judge replied that he could "only refer you to the Court's charge and the evidence submitted under the rulings of the Court." *Id.*,

accepting an appellate determination under Rule 81(b)(2) on the highly subjective notion that "Enough is enough!," *Bugarin,* supra, at 557, the Court should grant this PDR and remand the cause to the El Paso Court for reconsideration in light of *Arnold,* supra.

Because it does not, I respectfully dissent.

CAMPBELL, J., joins in this opinion.

at 56. At noon the court sent the jury to lunch, *ibid.;* at 2:15 p.m. the jury returned its verdict assessing fifty years confinement. Tr. 29.

On motion of the State the court "stacked" the fifty years on a sentence of ninetynine years imposed for a conviction the week before for unauthorized use of a motor vehicle.